UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEITH JOHNSON, M.D.,
Bringing this action on behalf of the
United States of America,
LAURA SCHMIDT, R.N.,
Bringing this action on behalf of the
United States of America,

                                    Plaintiffs,

                                                                           DECISION AND ORDER

                                                                           07-CV-6149L

                                  v.

THE UNIVERSITY OF ROCHESTER
MEDICAL CENTER,
STRONG MEMORIAL HOSPITAL,

                                    Defendants.
_____

       This is an action under the False Claims Act, 31 U.S.C. § 3729 *et. seq*. ("FCA"). Plaintiff-relators, Keith Johnson, M.D. ("Johnson"), and Laura Schmidt, R.N. ("Schmidt") (collectively "plaintiffs"), filed this *qui tam* action against the University of Rochester Medical Center ("URMC") and Strong Memorial Hospital (the "Hospital") (collectively "defendants"). In essence, plaintiffs contend that the defendants defrauded the United States Government by filing false and/or improper claims for payment under New York Medicare/Medicaid and other federal programs, for

anesthesiology services performed in the Obstetric and Gynecological Department and operating rooms ("OR") of the Hospital.

Plaintiffs' complaint sets forth three causes of action. In Count I, plaintiffs allege that defendants committed fraud pursuant to 31 U.S.C. §3729(a). In Count II, Johnson alleges that after he repeatedly advised his supervisors that he believed the Hospital was inadequately supervising its physicians in violation of Medicare/Medicaid regulations and fraudulently reflecting the presence of physicians on medical records in order to obtain reimbursement, the defendants retaliated against him by subjecting him to undue criticism and harassment, and in October 2006 compelled him to resign from employment rather than be terminated, in violation of 31 U.S.C. §3730(h). In Count III, Schmidt contends that after she advised the Hospital that it was inadequately supervising its resident physicians and refused to fraudulently alter medical records to reflect attendance of physicians at procedures for which they had not been present, she was given unduly negative performance reviews and ultimately terminated from employment in June 2006. (Dkt. #2).

Defendants have moved to dismiss the amended complaint for failure to plead fraud claims with the particularity required by FED. R. CIV. P. 9(b), and for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. #14). Plaintiff Johnson has cross-moved to amend the complaint to add allegations of libel per se and prima facie tort, and to add Dr. Lustik as a defendant. (Dkt. #18). For the reasons that follow, defendants' motion is granted, and plaintiffs' cross-motion is denied.

## FACTS

The Hospital is a teaching hospital owned and operated by URMC. Plaintiff Johnson was a medical resident who worked at the Hospital between July 2004 and October 2006, when he was terminated on the alleged grounds of dishonesty and incompetence. Plaintiff Schmidt was employed by the Hospital for fourteen years as an operating room nurse, from 1984 through June 2006, when her employment was terminated.

## DISCUSSION

In deciding whether plaintiffs' complaint should go forward, I note that there are several principles which apply simultaneously to the examination of a motion to dismiss under these circumstances.

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. PROC. 12(b)(6). In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *citing Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987). In seeking to defeat a motion to dismiss, "a plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Dept. of Corrections*, 2007 U.S. Dist. LEXIS 49079

(W.D.N.Y. 2007). In determining the motion, the Court's review is generally limited to the Complaint, as well as any documents incorporated by reference therein. *See Savino v. Fiorella*, 2007 U.S. Dist. LEXIS 43284 at *10-*11 (W.D.N.Y. 2007).

With respect to the specificity of the stated claims, the Federal Rules of Civil Procedure generally demand only "notice" pleading, with allegations sufficient to put the responding defendants on notice as to the general nature of the claim. However, where, as here, the complaint sounds in fraud, a more rigorous standard is applied. FED. R. CIV. PROC. 9(b) requires that fraud be pleaded with "particularity." The extent of that particularity is at issue here.

Additional concerns also come into play. The plaintiffs' claims are asserted pursuant to the False Claims Act, which allows private citizens, acting as private attorneys general, to commence litigation relating to fraud committed against the government. The purpose of the statute is to encourage citizens to act as "whistle blowers" and to assist in exposing fraud against the government. *See United States ex rel. Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2d Cir. 1990) ("[w]e also note that 'the purpose of the qui tam provisions of the False Claims Act is to encourage private individuals who are aware of fraud being perpetrated against the Government to bring such information forward'"), *quoting* H.R. Rep. No. 660, 99th Cong., 2d Sess. 22 (1986). The erection of unrealistic barriers to such actions would defeat the purpose of the Act. Therefore, individuals who act according to the statute and bring fraudulent claims forward are statutorily protected from punishment or retaliation against as a consequence of doing so. *See* 31 U.S.C. § 3730(h).

I.       **Plaintiffs' Fraud Claims**

Defendants argue that the plaintiffs have presented only general allegations and have failed to detail any false claims allegedly submitted by defendants, and therefore have failed to plead their fraud claims with sufficient specificity to satisfy Fed. R. Civ. Proc. 9(b). After a careful reading of the complaint, and affording all favorable inferences to the plaintiffs, I agree.

The complaint alleges a quotidian pattern wherein the Hospital compelled or permitted violations of the hospital's policy and Medicare/Medicaid regulations which require the presence or supervision of a teaching or attending physician (collectively, "TP") when certain procedures are performed by residents. Plaintiffs allege that the pertinent Medicare/Medicaid regulations make reimbursement for such procedures by residents contingent upon TP supervision.

The complaint identifies the general time period and frequency of the alleged failures to provide a supervising TP, some of the medical procedures for which TPs were not provided, and the names of various Strong faculty physicians who actively participated in, or else condoned, the practice. Plaintiff Johnson estimates that he performed several hundred epidurals and well over one thousand extubations or emergence procedures without the supervision of a TP, and that TPs rarely, if ever, filled out post-operative reports as required by statute. Both plaintiffs describe a number of examples of anesthetic procedures in which TPs were absent or unavailable to supervise residents performing procedures for which supervision was required, and state that they observed, or were instructed by TPs to author, falsified records indicating TP supervision in cases where there had been none.

Johnson states that in or about April 2005, he confronted Dr. Lustik concerning the fact that this practice was in violation of Medicaid and Medicare billing procedures, and began adding notations to medical records to indicate procedures for which TP had not been present. In November 2005, a memorandum was sent to anesthesiology residents and at least one verbal instruction was given, warning residents to discontinue notating the charts of patients for whom procedures had been performed without a TP.

Ultimately, after an incident in which Johnson refused to perform an epidural outside the presence of a TP, and attempted to procure one himself to oversee the procedure, Johnson was investigated by URMC, and his employment was eventually terminated.

Plaintiff Schmidt describes having specifically witnessed plaintiff Johnson and other residents performing services without the presence of a TP, and testifies that she was routinely required to sign falsified medical records for those procedures, which stated that a TP had been present. Schmidt recalls an incident in 2005, wherein Dr. Chibber asked her to alter medical records to falsely indicate the presence of a TP, and when she refused, was told that "we won't be able to bill for the case if there was no attending." Schmidt replied, "well I guess it's a freebie." Schmidt states that after this episode, she feared for her employment and cooperated with subsequent instructions to alter medical records. Several months later, Schmidt was terminated from her fourteen-year employment with URMC.

Clearly, the complaint's allegations, taken as true, establish that the Hospital was routinely failing to ensure the presence of a TP at certain procedures, and fabricating patient reports to falsely indicate that TPs were present. The parties do not appear to dispute that *if* the plaintiffs had

plausibly alleged that such procedures were later presented to Medicare or Medicaid for payment, their claims might have been sufficiently stated. The difficulty, however, lies in plaintiffs' glaring failure to even allege that bills for any of those procedures were ever presented to Medicare/Medicaid for payment.

The central question under the False Claims Act is whether the defendant actually presented a "false or fraudulent claim" to the government. *See Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 785 (4th Cir. 1999) (quoting *United States v. Rivera,* 55 F.3d 703, 709 (1st Cir. 1995)). "The statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *United States ex rel. Polansky v. Pfizer, Inc.*, 2009 U.S. Dist. LEXIS 43438 at *12 (E.D.N.Y. 2009), *quoting Rivera*, 55 F.3d 703 at 709. Thus, "[s]tanding alone, allegations of violations of federal regulations or laws are insufficient if a plaintiff cannot identify with particularity any actual false claims submitted by defendant to the government." *U.S. ex re. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 85 (D. Conn. 2006).

Nonetheless, plaintiffs appear not to have seen the proverbial forest for the trees. The plaintiffs' claims are set forth in a behemoth fifty-five page, 183-paragraph complaint (Dkt. #2), the majority of which is devoted to lengthy descriptions of the hospital's repeated failure to provide TP supervision, and its efforts to falsely indicate TP supervision on patient records. Nowhere in their lengthy pleading do the plaintiffs allege or describe how, *or even if*, any bills for procedures involving falsified records were ever presented to Medicare or Medicaid for payment. Indeed, plaintiffs do not even allege that any of the falsified records related to Medicaid or Medicare patients. As such, the plaintiffs' fraud claims do not state a claim, but merely *speculate* that a claim might

exist. *See United States ex rel. Smith v. N.Y. Presbyterian Hospital*, 2007 U.S. Dist. LEXIS 53826 at *20-*21 (S.D.N.Y. 2007)*; Smith*, 415 F. Supp. 2d 58 at 86.

Although the specificity requirements of Rule 9(b) must be met, I note that courts have relaxed the standards of that rule under certain circumstances. For example, when the necessary evidence of the essential elements of the claim is within the exclusive control of the defendant, some courts have allowed plaintiffs to plead "on information and belief." Nonetheless, a plaintiff must still set forth the factual basis for that belief, and that basis must arise from the plaintiff's direct, independent, firsthand knowledge. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F. 2d 1242, 1247 (2d Cir. 1987); *Smith*, 415 F. Supp. 2d 58 at 79-81; *Vallejo v. Investronica,* 2 F.Supp.2d 330, 336 (W.D.N.Y. 1998).

Courts have also permitted a "relaxed rule of pleading" under Rule 9(b) in cases where the alleged fraud is particularly complex, involves a large number of occurrences, or took place over an extended period of time. *See Smith*, 415 F. Supp. 2d 58 at 84, *citing In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004) (collecting cases). Nonetheless, the claim must still allege a factual nexus between the improper conduct and the resulting submission of a false claim to the government. "[A] plaintiff cannot circumscribe the Rule 9(b) pleading requirements by alleging a fraudulent scheme in detail and concluding, that as a result of the fraudulent scheme, false claims must have been submitted." *Polansky*, 2009 U.S. Dist. LEXIS 43438 at *13.

Here, the plaintiffs respectively allege that hundreds of procedures were performed without the TP supervision required by Medicare/Medicaid over a two year and fourteen-year period, ending with the plaintiffs' terminations in 2006. While the lengthy time period and sheer number of

potential claims may handicap the plaintiffs' ability to specifically detail each incident of fraud and reduce their burden of proof accordingly, it does not relieve them of the obligation to plead the necessary elements of fraud altogether. The submission of a false claim to the government is the cornerstone of any fraud claim pursuant to the FCA. *See Polansky*, 2009 U.S. Dist. LEXIS 43438 at *12. The plaintiffs' complaint offers nothing more than conclusory allegations and assumptions that the pattern of incidents the plaintiffs describe ever actually resulted in a fraudulent bill being submitted to Medicare and/or Medicaid for payment. Indeed, plaintiffs concede that they have not made such an allegation, and that they are not able to, because all evidence of Medicare and Medicaid reimbursement requests is solely with the possession of the defendants. However, "in the absence of reliable allegations indicating that particulars of fraudulent claims exist . . . [plaintiffs are] not entitled to receive a 'ticket to the discovery process' in order to meet Rule 9(b)'s particularity requirement." *United States ex rel. Lusby v. Rolls-Royce Corp.*, 2007 U.S. Dist. LEXIS 94144 at *21 (S.D. Ind. 2007). As the Second Circuit has observed, a relaxed pleading standard "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations . . . a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (finding that the district court properly dismissed a securities fraud claims alleged upon information and belief, and lacking supporting details).

The danger of permitting unsupported and insufficiently alleged fraud claims to proceed based solely on a party's lack of access to evidence is obvious. "[T]he particularity requirement of Rule 9(b) serves the purposes of, *inter alia*, preventing conclusory allegations of fraud from serving

as a basis for strike suits and fishing expeditions, and protecting defendants from groundless charges that may damage their reputations." *Smith*, 415 F. Supp. 2d 58 at 88. One of the primary purposes of Rule 9(b) is to prevent the prosecution of lawsuits that merely seek to establish the factual basis for some nebulous, unknown crime. *See O'Brien v. National Property Analysts Partners*, 936 F. 2d 674, 676 (2d Cir. 1991); *Madonna v. United States*, 878 F. 2d 62, 66 (2d Cir. 1989). Thus, "Rule 9(b) [fails] in its purpose if conclusory generalizations . . . permit a plaintiff to set off on a long and expensive discovery process in the hope of uncovering some sort of wrongdoing." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982).

In deference to these principles, district courts in this Circuit, when presented with facts markedly similar to those here, have dismissed the claims of FCA relators who allege noncompliance with Medicare/Medicaid regulations, but cannot identify or describe any particular false claims that were presented to the government for payment. In *Smith v. Yale Univ.*, 415 F. Supp. 2d 58, the relator, a radiologist, alleged that two hospitals which had employed him (Yale-New Haven Hospital in Connecticut, and New York Presbyterian Hospital in New York, operated by Cornell University) had each engaged in a pattern of Medicare/Medicaid fraud spanning several years. The alleged fraud consisted of the hospitals' submission of bills to Medicare/Medicaid for radiological studies that purportedly did not comply with applicable regulations and requirements. Nonetheless, while describing in detail the alleged non-compliance with regulations and postulating that the defendants "*must have* submitted claims for reimbursement from the Medicare program for all [fraudulent] reports for Medicare patients," the complaint did not identify a specific amount of fraudulent charges or the dates false claims were submitted, or provide a copy of a single bill or payment alleged to

relate to a fraudulent claim. *Id.*, 415 F. Supp. 2d 58 at 87 (emphasis added). Based on the completely speculative nature of the relator's claim that fraudulent bills had been submitted, the district court for the District of Connecticut determined that Smith's claims against Yale-New Haven Hospital failed to plead fraud with the particularity required by Rule 9(b), and dismissed them. *Id*.

Smith's claims against the New York-based defendants, New York Presbyterian Hospital and Cornell University, were ultimately transferred to the district court for the Southern District of New York, on the grounds that was a more appropriate venue, with proper jurisdiction to hear the matter. *United States ex rel. Smith v. Yale Univ.*, 2006 U.S. Dist. LEXIS 24847 (D. Conn. 2006). In that case, *United States ex rel. Smith v. N.Y. Presbyterian Hospital*, the district court for the Southern District of New York echoed the findings of the District of Connecticut and found that Smith's simple recitation of the "who, what, where, when and how" of the alleged fraud was insufficient to pass muster under Rule 9(b). The court noted that in order to allege fraud with particularity, a claim must include more specific details, such as the persons, amounts, dates and other facts relating to the alleged false claims. Because Smith failed to provide any supporting details for the "rough sketch" of fraud described in his complaint, such as "evidence of a specific, fraudulent bill sent to and paid for by the government," his fraud claims were dismissed. *Smith*, 2007 U.S. Dist. LEXIS 53826 at *20-*21, *24-*25.

In appraising the facts here, which are similar to the *Smith* matter in a number of significant respects, I find that whether viewed under a "relaxed" standard or under the heightened standard of Rule 9(b), plaintiffs have not sufficiently pled that any fraudulent claims were ever presented to Medicare and Medicaid for payment. Neither plaintiff has identified any particular case where a

fraudulent bill was presented, nor have they provided any factual basis upon which to conclude that they personally observed or had reason to know that fraudulent claims were submitted. As such, their fraud claims must be dismissed.

## II. Plaintiffs' Claim for Retaliatory Discharge

The plaintiffs also seek relief for retaliatory discharge pursuant to §3730(h) of the FCA, which provides that:

> [a]ny employee who is discharged . . . by his or her employer because of lawful acts done . . . in furtherance of an action under [the FCA], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h).

To sustain an action for retaliation under §3730(h), a plaintiff must demonstrate: (1) that she engaged in conduct protected under the statute: (2) that defendants were aware of her conduct; and (3) that she was terminated in retaliation for that conduct. *See Mikes v. Strauss*, 889 F. Supp. 746, 752 (S.D.N.Y. 1995). "[T]he term 'protected conduct' . . . is interpreted more narrowly when applied to FCA claims than to common or state law retaliatory discharge actions . . . The plaintiff must demonstrate that her investigation, inquiries, and/or testimony were directed at exposing a fraud upon the government." *Moor-Jankowski v. Bd. of Trs. Of New York Univ.*, 1998 U.S. Dist. LEXIS 12305 at *33 (S.D.N.Y. 1998).

Both plaintiffs allege that they complained, informally and on multiple occasions, to physicians about the Hospital's failure to provide TP supervision for certain procedures that required it. Johnson states that his complaints, including a complaint to Dr. Lustik that identified the Hospital's conduct as violative of Medicare/Medicaid regulations, and his attempts to annotate

patient records where TPs were absent in order to protect himself from liability if there was a problem with the procedure, ultimately resulted in his termination. Plaintiff Schmidt states that her complaints about the lack of TP supervision and falsification of patient records resulted in a confrontation with Dr. Chibber, who protested that if Schmidt did not agree to falsifying patient records, the procedures could not be "billed."

However, the plaintiffs do not allege that their complaints were made in furtherance of this or any other *qui tam* action, or that they were part of an investigation by either plaintiff into Medicare/Medicaid fraud. *See Vallejo*, 2 F. Supp. 2d 330 at 339. To the extent that Johnson complained to Dr. Lustik that the failure to provide TP supervision violated Medicare/Medicaid, he does not allege any knowledge that the procedures which lacked TP supervision were actually billed. Indeed, the plaintiffs' complaints appear to have been primarily motivated by frustration with TPs who were ignoring their responsibilities to supervise less experienced residents, at considerable peril to the residents and their patients, and moral objections to falsifying patient paperwork, rather than by a desire to expose or investigate Medicare/Medicaid fraud. (Dkt. #2 at ¶86 ("[Johnson] began to notate... patient records that TPs were not present... for fear that if Relator Johnson was to harm a patient during a procedure for which a TP was not present then the TP would merely indicate that he did not authorize the procedure"); ¶107 (the Hospital "permitted a resident with only three months of training to perform a c-section without a TP or attending physician physically present in the OR"); ¶119 ("an OB patient was forced to undergo a c-section under local anesthesia due to the lack of the physical presence of a TP or attending physician"); ¶122 ("had this patient needed an emergency c-section, [Johnson] would be unable to induce or intubate this patient in the absence of a TP or

attending physician, thus jeopardizing the mother and child"); ¶150 ("Schmidt objected to altering medical records to reflect that an attending was present when he was indeed not present"). While such motives are commendable, they are insufficient to bring a complaint within the ambit of the FCA.

Furthermore, even assuming that the plaintiffs' complaints to TPs were deemed to be protected conduct, plaintiffs plead no facts which suggest that they complained to hospital administrators or high level personnel, or that the defendants – the Hospital and the URMC – were otherwise aware that the plaintiffs were engaging in any protected activity whatsoever relating to Medicare/Medicaid fraud. *See Vallejo*, 2 F. Supp. 2d 330 at 339; *Moor-Jankowski*, 1998 U.S. Dist. LEXIS 12305 at *35-*36. Accordingly, the plaintiffs have failed to state a claim of retaliatory discharge pursuant to the FCA, and those claims must be dismissed.

**III.    New York State Whistleblower Act**

Although the plaintiffs' complaint lists the New York State Whistleblower Act, N.Y. Labor Law §740, as one of the statutory grounds for their claims, plaintiffs make no attempt to state such a claim by way of any substantive allegations, nor do plaintiffs request any relief under the Whistleblower Act. Accordingly, those claims must be dismissed.

**IV.    Plaintiff Johnson's Motion to Amend the Complaint**

Plaintiff Johnson seeks to amend the complaint to add Dr. Lustik as a defendant and assert claims for libel per se and prima facie tort against him and all of the original defendants. (Dkt. #18).[1]

---

[1] While the Court has the discretion to decline to exercise jurisdiction over the new claims based on the dismissal of all of the plaintiffs' extant federal law claims, given the patent frivolity of plaintiffs' proposed new claims I opt to dispose of them now in the interest of judicial
(continued...)

The allegedly tortious and defamatory statement is comprised of a "Verification of Post Graduate Medical Education" form ("Verification Form") which Dr. Lustik completed and forwarded to certain medical authorities in the state of Delaware (the "Delaware Board"). The Verification Form required Dr. Lustik to describe any disciplinary proceedings against Johnson, and Dr. Lustik did so by attaching a copy of a November 15, 2006 memorandum from Johnson's final employment evaluation, which summarized disciplinary proceedings against Johnson by URMC. Specifically, Johnson contends that: "Dr. Lustik, despite being previously warned to cease and desist targeting Relator Johnson nonetheless saw fit to publish, in or about the summer of 2008, **unsolicited**, a negative reference to the State of Delaware Board of Medical Practice, dated November 15, 2006 ..." (Dkt. #18, Att. 2 at 3) (emphasis in original).

While leave to amend a complaint is to be freely given under ordinary circumstances, it is properly denied for good cause, including where amendment would be futile, or where the proposed amendment is made in bad faith. *See generally* Fed. R. Civ. Proc. 15(a); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *Joblove v. Barr Labs. Inc.*, 466 F.3d 187, 220 (2d Cir. 2006).

I find that Johnson has failed to demonstrate any entitlement to amend his complaint. Indeed, his proposed claims appear to have been asserted both frivolously and in bad faith. Johnson has tellingly made no attempt to refute or otherwise respond to defendants' contention that the allegedly

---

[1](...continued)
economy and convenience, rather than subject the parties to additional, unnecessary litigation. *See Glewwe v. Eastman Kodak Company*, 2006 U.S. Dist. LEXIS 33449 at *13 (W.D.N.Y. 2006) (in determining whether it is appropriate to decline jurisdiction, the court will consider, inter alia, "judicial economy, convenience and fairness to litigants"), *quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996).

libelous and tortious Verification Form was not completed by Dr. Lustik "**unsolicited**," as plaintiff asserts. (Dkt. #18, Att. 2 at 3) (emphasis in original). To the contrary, Dr. Lustik completed and published the form *at the request of plaintiff's own counsel*, who sent the form to Dr. Lustik with the instruction that he complete it and forward it to the Delaware Board. At the behest of a cautious Dr. Lustik, plaintiff *twice* executed explicit authorizations for the allegedly defamatory statement to be released. First, Johnson signed a release authorizing Dr. Lustik to provide his "final [employment] evaluation, including the attachment dated November 15, 2006," to his counsel. (Dkt. #19, Att. 1, Exh. C). Some sixteen months later, in connection with his counsel's request to Dr. Lustik to complete the Verification Form and forward it to the Delaware Board, Johnson completed a second authorization for Dr. Lustik's "release of the [Verification Form], including the attachment dated November 15, 2006." (Dkt. #19, Att. 1, Exhs. D, E). Now, Johnson inexplicably seeks to hold Dr. Lustik liable for the publication of a Verification Form which Johnson and his counsel asked Dr. Lustik to prepare, authorized to be released with full knowledge that the November 15, 2006 statement was attached, and in fact *requested* that Dr. Lustik publish in the precise manner of which Johnson now complains.

Johnson's counsel, Ms. Agola, knew full well that Dr. Lustik did not "see fit to publish [the Verification Form and its attachment] "**unsolicited**," as she attests in an accompanying affidavit. (Dkt. #18, Att. 2 at 1, 3) (emphasis in original). She knew that Dr. Lustik's publication of the document had been procured and orchestrated entirely by her – a fact which contradicts the allegations of the proposed amended complaint and which is glaringly omitted from it. Such conduct smacks of bad faith.

In any event, Johnson's proposed claims fail as a matter of law. It is well-settled in the state of New York that Johnson's release provides a complete defense for Dr. Lustik against Johnson's libel per se claim and a probable defense against his prima facie tort claim, and furthermore Johnson has failed to plead the necessary element of special damages in connection with his prima facie tort claim. *See e.g.*, Restatement (Second) of Torts §583 ("the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for defamation"); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (prima facie tort claim requires conduct to be undertaken without excuse or justification); *ATI, Inc. v. Ruder & Finn*, 42 N.Y.2d 454, 458 (1977) (allegation of special damages is an essential element of prima facie tort).

Accordingly, I conclude that amendment of the complaint would be inappropriate in light of plaintiff's demonstrated bad faith, and would in any event be futile.

**V.     Defendants' Request for Sanctions Pursuant to Fed. R. Civ. Proc. 11(b)(3)**

The defendants have asked the Court to impose sanctions on plaintiff Johnson and his counsel for attempting to introduce, as discussed above, an amended pleading that includes allegations wholly lacking in evidentiary and legal support. Fed. R. Civ. Proc. 11, however, specifies that a "motion for sanctions must be made separately from any other motion . . ." Fed. R. Civ. Proc. 11(c)(2). I will accordingly deny defendants' request for sanctions, without prejudice to defendants' right to move for sanctions by separate motion in accordance with Fed. R. Civ. Proc. 11(c)(2).

## CONCLUSION

For the foregoing reasons, I find that plaintiffs have failed to sufficiently plead their claims for fraud and/or retaliation pursuant to the FCA. Defendants' motion to dismiss (Dkt. #14) is therefore granted, and the complaint is dismissed. Plaintiff Johnson's motion to amend the complaint (Dkt. #18) is denied as frivolous and in bad faith. Defendants' request for sanctions pursuant to Fed. R. Civ. Proc. 11 is denied, without prejudice to defendants' right to bring a separate motion seeking such relief.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 18, 2010.